IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

JOHN LAYE,                              }
                                        }
    Plaintiff,                          }
                                        }
v.                                      }   Civil Action No.: 7:13-CV-01135-RDP
                                        }
CAROLYN W. COLVIN,                      }
Acting Commissioner of Social Security, }
                                        }
    Defendant.                          }


**MEMORANDUM OF DECISION**

    Plaintiff John Laye brings this action pursuant to Title II of Section 205(g) and Title XVI of Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") prior to March 10, 2012, when Plaintiff's age category changed. *See also*, 42 U.S.C. §§ 405(g) and 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

    Plaintiff filed for disability, DIB, and SSI on July 23, 2010. Plaintiff's applications were denied on November 29, 2010. (Tr. 69-80, 122). Plaintiff then requested (Tr. 81-82) and received a hearing before Administrative Law Judge Debra H. Goldstein ("ALJ") on April 23, 2010. (Tr. 34-54). In her decision dated May 10, 2012, the ALJ determined that Plaintiff was not disabled under Section 1614(a)(3)(A) of the Act since July 23, 2010, the date Plaintiff filed his applications. (Tr. 122). The ALJ did, however, determine Plaintiff to be disabled under Section

1614(a)(3)(A) beginning March 10, 2012 and continued to be disabled through the date of her decision. (Tr. 22).  After the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1), that decision became the final decision of the Commissioner and therefore a proper subject of this court's appellate review.  Plaintiff challenges the ALJ's determination that he was not disabled between July 23, 2010 and March 10, 2012.

At the time of the hearing, Plaintiff was fifty years old and had a high school education. (Tr. 21). He claims November 30, 2009 as the onset date of his current disability. (Tr. 15). Plaintiff disclosed that he was involved in a serious motor vehicle collision on July 16, 2007. (Tr. 39). Plaintiff alleges pain in his pelvis,[1] his right leg is smaller than his left, and he has foot drop in his right foot. (Tr. 40, 245-246, 265).  Following the accident, Plaintiff was given a wheelchair, then progressed to a walker, then a crutch, and now uses a cane. (Tr. 45, 248). Plaintiff was also given a brace to help him walk.  (Tr. 40, 265).  Plaintiff rated the pain in his pelvis and ankle as an eight on a zero to ten scale. (Tr. 40, 42).

With regard to his domestic life, Plaintiff reported that he can no longer walk long distances, stand for no more than ten minutes, and sit for no more than twenty minutes. (Tr. 43). Plaintiff alleges he spends anywhere from four to six hours laying down each day. (Tr. 43). Plaintiff no longer drives, and recently moved in with his brother, who does all the household chores.[2] Plaintiff stated he currently takes 600 mg. of Ibuprofen for pain, and medicine for his prostate[3] and blood-pressure. (Tr. 45-47).

---

[1] Plaintiff had surgery to insert two screws into his pelvis. (Tr. 40, 245-246).

[2] Plaintiff originally lived with his sister until her move to Tuscaloosa, AL approximately two weeks prior to the hearing with the ALJ. (Tr. 44).

[3] Plaintiff stated during the hearing that he had a colonoscopy and a polyp removed on October 28, 2010.

Plaintiff has performed past relevant work as a cutoff saw operator, lumbar stacker handler, and industrial cleaner. (Tr. 50). All of these jobs required at least medium physical demands. His role as a cutoff saw operator is considered to be semiskilled while his other jobs are considered unskilled positions. (Tr. 50). When asked if he had worked any in the past few years, Plaintiff responded he had not. (Tr. 48-49).

During his alleged period of disability following his motor vehicle collision, Plaintiff was seen and treated by multiple physicians: Drs. Rena Stewart, Stephen Ikard, Jeff Brown, Larry Skeleton, and Judy Travis. (Tr. 39-46, 257, 259, 263, 265, 277, 289-290, 306-307, 310-311, 321-323, 326-329). Immediately following the collision on, Plaintiff was taken to the Druid City Hospital Regional Medical Center and underwent surgery for a descending thoracic aortic tear. Plaintiff also suffered hydropneumothorax on the right side. (Tr. 211). On July 20, 2007 Plaintiff was discharged to the University of Alabama-Birmingham ("UAB") Medical Center. While at the UAB Medical Center, Plaintiff was ventilated and received a nasogastric feeding tube. He also underwent percutaneous pinning of the right sacroiliac joint. (Tr. 247).

On August 22, 2007, Dr. Rena Stewart performed Plaintiff's first follow-up examination. Dr. Stewart diagnosed Plaintiff with pelvic ring injury with right sacroiliac screw fixation. Plaintiff continued to show signs of sciatic nerve palsy and reduced power to the right foot. Plaintiff was placed in a boot for equinus of the right ankle. (Tr. 265).

Plaintiff was examined by Dr. Stephen Ikard at the University Orthopedic Clinic on August 23, 2007. (Tr. 257). Dr. Ikard reported the following:

> [O]n examination, [Plaintiff] is in a wheelchair, nonweightbearing. He has intact gentle flexion-extension of the hip, with rotation as well. Knee has good flexion-extension. He can dorisflex and plantar flex the foot, ankle and toes. He has some mild weakness to dorsiflexion of the foot perhaps but he can dorsiflex the ankle and dorsiflex the toes. He has obvious function of the peroneal nerve.

> There is some weakness that he cannot dorsiflex acutely all the way but he is being stretched.

(Tr. 257).

Plaintiff returned to see Dr. Stewart on October 12 and November 29, 2007. During the first of two visits with Dr. Stewart, the record notes, "[Plaintiff] continues to have profound foot-drop which is from time of injury." (Tr. 263). During his return visit on November 29, 2007, Dr. Stewart noted, "[Plaintiff] is having some improvement of his foot drop which was present at the time of injury and has continued to wear his 3d boot and very clearly understands to get his heal down in the boot . . . which has improved his dorsiflexion." (Tr. 259). Plaintiff showed a 2/5 power of dorsiflexion and EHL.[4] Also, it is important to note that Dr. Stewart informed Plaintiff he would no longer be eligible for Charity Care because he had entered into a lawsuit. (Tr. 259).[5] Dr. Stewart instructed Plaintiff that he may begin to advance weight bearing to weight bearing as tolerated "as [he was] concerned [Plaintiff] would not receive therapy." (Tr. 259).

On June 18, 2008, Plaintiff visited Jeff Brown, D.P.M., for pain and swelling in the left ankle. Dr. Brown noted Plaintiff's right foot drop, but the examination focused on his left foot, finding the pain is made worse with ambulation and weight bearing. (Tr. 277-288).

On August 31, 2010, Plaintiff began treatment at the Tuscaloosa Veterans Affairs Medical Center ("VA"). Examinations showed Plaintiff had a stiff leg and abnormal gait. (Tr. 321). An x-ray, on the same date, showed marked deformities in his pelvic region. (Tr. 325). The following day Plaintiff was given a plastic ankle-foot orthosis ("AFO") for his right leg and a cane. (Tr. 313). Furthermore, the report states, "[n]o further treatment is needed, therefore

---

[4] Extensor Hallucis Longus.

[5] Charity Care would pay for Plaintiff's therapy, but by entering into a lawsuit Plaintiff became ineligible. Dr. Stewart informed Plaintiff that either he or his lawyer would have to cover the costs of therapy, or he would not receive it. (Tr. 259).

4

patient is d/c'ed . . . ." (Tr. 313). Plaintiff visited the VA once again on October 5, 2010. The report notes Plaintiff states he can walk around the block before needing rest and still experiences pain in his right side. The report further states Plaintiff had impaired mobility and gait, impaired balance, poor endurance, and right foot drop. (Tr. 311).

The Social Security Administration sent Plaintiff to be examined by Dr. Larry Skelton. On September 15, 2010, Plaintiff was examined and found to have hypertension, mixed hyperlipidemia, COPD,[6] pelvic and leg pain. Dr. Skelton reported the following:

> [Plaintiff] received major lung, heart, pelvis, and rt. leg injuries in this MVA. His rt. leg is much smaller and weaker than his left leg, and he experiences pain constantly in pelvis and rt. leg and foot . . . I see no way he will ever be able to work in society again.

(Tr. 291).

Following his automobile accident, Plaintiff stated he started to experience leg tremors. On October 13, 2010, Plaintiff presented for a neurological consultation to determine the cause of his tremors. The report listed possible restless leg syndrome, foot drop, but no evidence of tremor disorder. (Tr. 327). On November 16, 2010, Dr. Judy Travis performed x-rays of Plaintiff at the request of the Social Security Administration. The report read as follows:

> X-ray Right Hip: The pelvis is consistent with a devastating complex fracture with resultant loss of normal architecture . . . The femoral ball is intact. The acetabulum has severe sclerosing and spurring inferior and medially.
> X-ray Right Ankle: Sclerosing between tibia and fibula . . . There is severe osteopenia in the calcaneous.

(Tr. 329).

Plaintiff underwent physical therapy at the VA from November 2010 through early December 2010. On December 7, 2010 Plaintiff was noted as having normal muscle tone, intact sensation, performed independent walking with a cane, and has good coordination. (Tr. 322).

---

[6] "Patient is positive for COPD, collapsed lung due to MVA." (Tr. 290).

Plaintiff was also noted as having no pain that interfered with optimal level of functioning or participating in rehabilitation. (Tr. 333).

Toward the end of Plaintiff's hearing, the ALJ posed a hypothetical question to the Vocational Expert ("VE"). (Tr. 50-53). The ALJ asked the following question: assume there is a person with the same age, education, and past relevant work as Plaintiff, who has hypertension, one smaller leg, pelvic pain, and for purposes of the hypothetical, the individual's pain is mild and can be treated with Ibuprofen, and the person can run at physical therapy – are there current jobs available for such a person with the described circumstances? The VE suggested such an individual could perform sedentary jobs such as food checker, document scanner, and telephone verbayer or administrate, all of which are available in significant numbers in both the state and national economies. (Tr. 51-53). The ALJ altered her hypothetical and asked if a person with the same circumstances as in the first hypothetical could perform these sedentary jobs with pain that reaches a level of eight, and requires the individual to lie down for six hours a day or do other pain relieving activities. The VE stated this situation would make a person unable to sustain full-time competitive work. (Tr. 51-53).

Based on the VE's testimony, Plaintiff's testimony, and the entirety of the record, the ALJ determined that there exists a significant number of sedentary jobs in the national economy that Plaintiff could have performed prior to March 10, 2012, found in 20 C.F.R. §§ 404.1567(a) and 416.967(a). (Tr. 18). However, on March 10, 2012, Plaintiff's age category changed, and after considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that there are no jobs that exist in significant numbers in the national economy as found in 20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), and 416.966 that Plaintiff can perform. (Tr. 22).

**II.     ALJ Decision**

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant

is able to perform any other work commensurate with his RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the present case, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 30, 2009. The ALJ determined Plaintiff has a combination of the following severe impairments -- status open reduction sacroiliac joint, right foot drop, and hypertension -- which satisfies the second prong of the analysis as set forth in 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 17). The ALJ further determined that although these impairments cause more than a minimal impact on Plaintiff's ability to perform work related activities, these impairments, individually or in combination, are insufficient to qualify Plaintiff for disability prior to March 10, 2012. (Tr. 17, 21). With regard to the third prong, the ALJ determined that Plaintiff has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 18).

The ALJ must also examine the claimant's ability to work despite his impairments, and the claimant must provide medical evidence to support statements of severity. (Tr. 18). The ALJ recognized the impairments of Plaintiff, but when comparing the claimed severity of the pain to the testimony given, the ALJ determined the testimony not to be fully credible. (Tr. 19). Plaintiff claims he continued to socialize with friends and left his home every day. The ALJ determined the evidence reasonably implies the alleged symptoms existed, but found the severity and claimed limitations not to be fully credible. The ALJ relied on medical evidence, and determined

that Plaintiff's situation had actually improved over time, as he went from using a wheelchair, to a walker, and finally progressed to a cane. (Tr.19). Plaintiff claims to use Ibuprofen for his pain, but that suggests that he lacks chronic pain requiring stronger medication. (Tr. 50-51). Indeed, Plaintiff provided no medical evidence showing his pain required prescription medication.

In the final steps of the analysis, the ALJ found Plaintiff is unable to perform his past relevant work as a cutoff saw operator, lumbar stacker handler, and industrial cleaner. (Tr. 21). However, based on the hypothetical questions posed to the VE, the ALJ determined that prior to March 10, 2012, when Plaintiff's age category changed, and taking into account Plaintiff's age, education, work experience, and RFC, "there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed." (Tr. 21-22).

### III. Plaintiff's Argument for Reversal

Plaintiff presents two arguments for reversal: he contends (1) the ALJ erred in rejecting the opinion of consultative examiner Dr. Larry Skelton, who was the only physician to provide a functional assessment of his capabilities, and (2) the ALJ erred in assigning a RFC that is not supported by the evidence of record.

### IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of

the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V. Discussion

After careful review, the court concludes that the ALJ's determination that Plaintiff was not disabled prior to March 10, 2012 is supported by substantial evidence and the ALJ applied proper legal standards in reaching that decision. The court addresses each of Plaintiff's arguments below.

### A. The ALJ Did Not Err In Rejecting the Opinion of the Consultative Physician.

Dr. Skelton, the SSA's consultative physician, stated, "I see no way [Plaintiff] will ever be able to work in society again." (Tr. 291). Plaintiff contends the ALJ failed to give weight to Dr. Skelton's opinion. (Pl.'s Mem. 6). Plaintiff alleges his injuries are more than mere "discrepancies" and are medically based functional limitations. (Pl.'s Mem. 6). Specifically, Plaintiff alleges all the objective evidence in the record supports Dr. Skelton's findings. (Pl.'s Mem. 7).

Under the treating physician rule, the weight given to a doctor's opinion depends on the relationship with the claimant, the evidence presented, and the consistency of that evidence with the record as a whole. 20 C.F.R. §§ 404.1527(c) and 416.927(c)(2).  Good cause must exist for the Commissioner to disregard the findings of a treating physician. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Without question, Dr. Skelton is not a treating physician.  He only examined Plaintiff once.  The ALJ concluded that Dr. Skelton's opinion did not merit weight because his assessments were not only inconsistent with the overall objective medical evidence, but also with his own medical examination, as well. (Tr. 20, Comm'r Mem. 6). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).  In *Edwards v. Sullivan*, the court determined good cause exists when the doctor's own notations contradicted his findings. 937 F.2d 580, 583-584 (11th Cir. 1991); *see also Crawford v. Comm'r Soc. Sec.*, 363 F.3d 1155, 1159-1160 (11th Cir. 2004).  Here, the ALJ noted that Dr. Skelton determined Plaintiff had no back pain, had full range of motion at the lumbar, spine, elbows, shoulders, wrists, and left hip but decreased range of motion at the right hip and ankle. (Tr. 20, Comm'r Mem. 6). Dr. Skelton noted that the shaking in Plaintiff's left leg improved with walking. (Tr. 20, Comm'r 6).

The record reflects Plaintiff went to the VA for physical therapy, uses a cane to walk, and that his ambulation has improved since he began using a foot brace and cane. (Tr. 300-327, Comm'r Mem. 6). The medical evidence reveals treatment for hypertension, but there is no evidence of vocational restriction, and, to the contrary, suggests that Plaintiff's condition is controlled by oral medications. (Tr. 279-287, 300-327, Comm'r Mem. 6). Plaintiff claims he must lie down multiple hours each day (Tr. 43), but the totality of the evidence fails to support

that claim. The ALJ properly concluded that while Plaintiff clearly sustained multiple injuries, prior to March 10, 2012, Plaintiff's ability to walk and stand rendered him capable of performing sedentary tasks. Again, the record shows no indication of chronic pain, as Plaintiff merely utilized over-the-counter Ibuprofen to manage discomfort. (Tr. 20-21, Comm'r Mem. 6-7). As such, the ALJ's findings are supported by substantial evidence in reaching his decision.

### B.     The ALJ Did Not Err In Assigning Plaintiff's Residual Functional Capacity.

Plaintiff next argues the ALJ erred in assigning a RFC for the full range of sedentary work. (Pl's Mem. 7). Specifically, Plaintiff, once again, bases his argument on the ALJ's rejection of Dr. Skelton's findings. As already noted, the ALJ was justified in rejecting those. Moreover, the ALJ properly relied on the record evidence as a whole in finding Plaintiff is capable of sedentary work. Dr. Skelton only examined Plaintiff once. Yet the record reflects that, on other occasions, Plaintiff testified he leaves the house daily (Tr. 44, 178), and has shown improvement by using the AFO. (Tr. 304). Although Plaintiff may have continued to experience some pain due to his injuries, he has taken over-the-counter Ibuprofen to manage that, and, in any event, has failed to put forward evidence of chronic pain. (Tr. 21, 46, Comm'r Mem. 7). Accordingly, the ALJ found the testimony of Plaintiff was not fully credible nor was it consistent with the medical and other evidence as a whole. (Tr. 20). The ALJ's rulings are supported by substantial evidence.

### VI.    Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled, prior to March 10, 2012, is supported by substantial evidence and the proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** August 19, 2014.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE